LUCKEMEYER *v.* MAGONE, Collector.

*(Circuit Court, S. D. New York. January 7, 1889.*

CUSTOMS DUTIES—DRESS GOODS—ACT MARCH 3, 1883, SCHEDULE L.
Women's dress goods composed chiefly of wool, with from 1.99 to 4.74 per cent. of cotton introduced in the warp and selvedges thereof for the purpose of changing the classification, in the form of a fiber, the warp being a mixed or compound thread of wool and cotton, *held* not to have been made "with threads of other materials," within the meaning of said schedule. *Also, held,* that the language of said paragraph in said Schedule K explicitly restricts the operation of said clause to threads wholly composed of other materials than wool or worsted.

*(Syllabus by the Court.)*

At Law. Action to recover customs duties.

The plaintiffs, the firm of Luckemeyer, Schefer & Co., of the city of New York, on November 14, 1887, imported certain women's dress goods, composed chiefly of wool, with a very slight percentage of cotton, and valued at not exceeding 20 cents per square yard. The defendant, as collector of customs at the port of New York, levied and collected duty at 9 cents per square yard, and 40 per centum *ad valorem*, under Schedule K of the tariff act of March 3, 1883, (Heyl, 365,) claiming that such goods were made with threads of other materials than wool or worsted, introduced for the purpose of changing the classification; and also claiming that the selvedges of said goods were made wholly or in part of other materials. Plaintiffs claimed that these dress goods were composed in part of wool, and under the same schedule were dutiable at 5 cents per square yard and 35 per centum *ad valorem*. The merchandise in suit was manufactured in France at the request of plaintiffs, by a peculiar process, by which the cotton was introduced into the warp of the fabric prior to the spinning process. The warp consisted of woolen and cotton fibers twisted together. The filling was entirely of wool. The selvedges of the goods were composed of wool and cotton. No separate, single, and entire thread of cotton was traceable in the goods. In appearance, texture, quality, and use they were indistinguishable from women's dress goods composed wholly of wool. The cotton in the fabric could only be discovered by chemical analysis. The original purpose of introducing such cotton in the warp of the goods was for the purpose of changing the classification. The percentage of cotton in these goods varied from 1.99 to 4.74. The fibers of cotton in the warp of these goods were continuous, but irregular in size. The paragraph of the tariff act of 1883, under which duty was assessed, is as follows:

"Women's and children's dress goods, coat linings, Italian cloths, and goods of like description, composed in part of wool, worsted, the hair of the alpaca, goat, or other animals, valued at not exceeding twenty cents per square yard, five cents per square yard, and in addition thereto, thirty-five per centum *ad valorem;* valued at above twenty cents per square yard, seven cents per square yard, and forty per centum *ad valorem;* if composed wholly of whool, worsted, the hair of the alpaca, goat, or other animals, or of a mixture of them, nine cents per square yard and forty per centum *ad valorem;* but all such goods with selvedges, made wholly or in part of other materials, or with threads of other materials introduced for the purpose of changing the classification, shall be dutiable at nine cents per square yard and forty per centum *ad valorem:* provided, that all such goods weighing over four ounces per square yard shall pay a duty of thirty-five cents per pound and forty per centum *ad valorem.*"

*Francis Lynde Stetson,* for plaintiffs.

*Stephen A. Walker,* U. S. Atty., and *Henry C. Platt,* Asst. U. S. Atty., for defendant.

LACOMBE, J., (*orally charging jury.*) Before coming to the particular question which I shall submit to you, it is only right, in view of the great elaborateness and care with which this case has been presented by counsel, that I should briefly state the reasons which lead me to the conclusion I have reached.

What the intent of congress was in enacting this particular paragraph seems reasonably plain from the common knowledge which we all possess, and from a comparison of it with the paragraph of the Revised Statutes, which was the law on the same subject immediately preceding the adoption of the act of 1883. Of course, it is a matter of common knowledge that our tariff acts are devised for more than the single purpose of raising revenue. The creation, protection, and fostering of home industries, large, small, or yet unborn, is an element which is largely considered by the law-makers when they frame these statutes. And that some such object was intended here seems to me plainly apparent upon a comparison of the two paragraphs, No. 365 of this act, and the corresponding clause in the Revised Statutes. By the act of June 22, 1874, all women's and children's dress goods, whether made of mixed materials, or made wholly of wool, were dutiable at 6 cents per square yard and 35 per centum *ad valorem.* The act of March 3, 1883, divided such articles into two groups,—the mixed goods, and the wholly wool goods. On the mixed goods it reduced the duty from 6 cents per square yard and 35 per centum *ad valorem* to 5 cents per square yard and 35 per centum *ad valorem;* but on the wholly wool goods it raised the duty very materially, viz., from 6 cents per square yard and 35 per centum *ad valorem* to 9 cents per square yard and 40 per centum *ad valorem.* The mere comparison of these two paragraphs seems plainly to indicate that there was an intention, in fixing this new rate of duty, to accord some measure of protection to the wholly wool goods. Taking that into consideration, the plain, first meaning which any one would draw from the closing part of the paragraph which begins with the words "if composed wholly of wool, worsted," etc., is that congress intended to provide that if goods in reality of the wholly woolen class were so disguised as to masquerade as mixed goods, when in reality they were wholly of wool, they should not by that operation avoid the heavy discrimination which was laid against the wholly woolen goods. Although we may be quite well satisfied, however, that such was the intent of congress, and with due appreciation of the great lengths to which the courts have repeatedly gone in applying the doctrine of interpretation according to intent, I do not feel warranted in interpreting this last clause of the paragraph according to the intent expressed above unless we can find within the plain language used, when fairly construed, such words as will warrant the application of that interpretation. In what way, then, do they provide for the goods which, although in reality of one class, may be claimed, in order to evade the operation of the tariff act, to be another? By the enumeration of certain kinds of goods in an excepting clause. First, the exception provides for "all such goods with selvedges made wholly or in part of other materials." The use of the word "such," and of the word "other," turns us back to preceding words in order to find out what that particular clause means. Turning to those words, we find the whole sentence to read thus: "If composed wholly of wool, worsted, etc., or of a mixture of them, 9 cents per square yard and 40 per centum *ad valorem;* but all such goods with selvedges made wholly or in part of

other materials," etc. The only possible construction of that clause, standing by itself, seems to be that goods composed *wholly* of wool, worsted, or a mixture of them, shall pay 9 cents per square yard and 40 per centum *ad valorem*, and that all goods composed wholly of wool, worsted, or a mixture of them, but which have selvedges made wholly or in part of other materials, (and to that extent are in fact of mixed material,) shall pay the same rate as provided further on. That disposes of the first clause of the exception. The other clause provides for "all such goods * * * with threads of other materials introduced for the purpose of changing the classification." This is the clause I shall leave to the jury. It is undisputed that the threads of the warp are composed of a mixture of cotton and woolen, and for that reason the defendant asks for a direction in his favor. In my opinion, however, the clause does not cover goods with threads of mixed material, *i. e.*, if the mixture is not itself a mixture of threads. The word "other," as we have seen above, means "other than wool, worsted," etc., and the abrupt change in the same sentence from the phrase "wholly or in part of other materials," descriptive of the selvedges, to the phrase "of other materials," descriptive of the threads, seems explicitly to restrict the clause to threads into whose composition neither wool nor worsted enter.

Now, gentlemen of the jury, the question before you is perhaps a simple one, but the task before me, in leaving it to you, I find to be extremely difficult. When we get away from the domain of science and the strictly accurate phraseology which it employs, one of the hardest tasks that can be laid upon us is to give an accurate definition of any particular word. That with which you are here concerned is the word "thread." It is a word which perhaps each of you uses more than once each day of his life. What are you to understand that word to mean when you come to deal with the facts of this case? Of course, when we are challenged to find the meaning for a word, however familiar we may be with it ourselves, it is our custom to go to the dictionaries; and so we may, in this instance, turn to them. Now, lexicographers have several functions which they undertake to discharge. They deal not only with the every-day meaning,—the received meaning in common speech of any particular word,—but they hunt down its antecedents; they trace its origin and its growth; they find in some syllable, or combination of its letters, the root from which it has sprung; and in preparing their definitions they take all these elements into consideration. That should be remembered whenever we turn to a dictionary for a meaning. The most comprehensive meaning which I have found in any of the authorities which have been submitted—and we had best begin with the most comprehensive meaning—the most comprehensive definition of the word "thread" which I have found, is in Worcester: "A small line or twist of any fibrous or filamentous substance, as flax, silk, cotton, or wool, particularly such as is used for weaving or for sewing; a filament; a small string." Turning to the same dictionary for a definition of the word "filament" we find it defined as "a substance like a thread; a long thread-like process; a slender fiber." That is the most comprehensive and far-reach-

ing definition of the word which I find in any of the dictionaries. It indicates that a thread is produced by some process or other which gives to its constituent parts a twist; and even the alternative word which is used,—"filament,"—which perhaps we would ordinarily, in common speech, not consider as necessarily importing a twist,—even the word used as its alternative by Worcester,—is defined as "a substance like a thread; a long thread-like process;" thus indicating some measure of twisting. Of course, the thread that we speak of in our every-day speech is not only twisted, but it is twisted to such a degree that it has an increased sustaining power. Thus this little piece of string which lies on the edge of the desk will not only hold itself together, but will also bear a weight of greater or less amount which may be affixed to it. There is not, however, in the definition given above anything to indicate that a measure of self-sustaining strength is necessarily imported in the strict idea of a thread; and, when using the word in its general meaning, (that is, in the broad meaning in which we are entitled to take it when we find it in an act of congress, except for a qualification, to which I will call your attention later on,) we need not assume that the twisting, or other operation which produces the twist, and which seems essential, according to the definition, should be continued so far, or to such an extent, as to make a filament of any particular resisting power. Beyond the definition thus given (and I feel that it is perhaps far from satisfactory) I am unable to derive any light from the dictionaries in leaving to you the determination of the question whether these fabrics contain "threads" of other materials.

There is another branch of the case, however, which is entitled to consideration at your hands. Words are assumed to be used by congress in the tariff laws in their ordinary meaning, unless some other meaning is attached to them. Usually that proposition is discussed as a question whether or not a particular trade meaning—a meaning different from its ordinary, every-day meaning—has been given to a word; and thus we often receive the testimony of tradesmen as to the meaning of words in the acts of congress. But there is no question here of any such particular trade use of the term. Under the decisions of the supreme court, in the *Square Yard Cases*,[1] I do not think that the word is here to be taken as used with any specific trade meaning; and I should have excluded any evidence of specific trade meaning if it had been offered. But I may say to you that in applying to the facts of this case the general definitions which I have given you, you are entitled to take into consideration the fact that congress, when it used this general word in this schedule of the tariff act, was dealing with textile fabrics. To that extent I think that you are entitled to consider the evidence which has been introduced here as to the methods of production of what the witnesses here spoke of as "thread."

The two questions, and the only questions, for you to decide are: (1) Have there been introduced into these goods threads of material

---

[1] Schmieder v. Barney, 5 Sup. Ct. Rep. 624, and cases there cited.

other than wool or worsted? That is, threads, as threads of other material; not composition, or compound threads composed of wool and other materials, but threads composed wholly of material other than wool. (2) If you reach the conclusion that there has been introduced in these goods threads of other material than wool, you have then to determine with what purpose those threads were introduced. Under the concession of counsel for the plaintiffs your task in determining as to the intent will present but few difficulties. He concedes that originally the goods of this class were devised, in the first place, to escape the higher rate of duty; but insists that as to the particular goods in these eight cases there were operating upon the minds of the plaintiffs, who imported them, as least two causes to induce them to import them in this particular shape. One cause was the endeavor to introduce them at a lower rate of duty; and the other was the circumstance that they were more readily salable, or better adapted to the purposes of his customers. In determining as to the purpose with which they were introduced, you are to consider the predominant purpose. You are to take into consideration the testimony here,—not only the statement of the particular importer, but also all such facts as have been shown in the evidence from which you may fairly infer what his intent was; and, considering the entire body of testimony, you are to determine whether the predominant operating cause which induced him to bring in the goods in this character and form, was the purpose of changing the classification, or the other purpose or purposes which he has indicated.

Those two are the only questions which you will have to consider. Should you decide both those questions in the affirmative,—that is, that threads of materials other than wool have been introduced here, and that they were introduced with the intent of changing the classification, —then your verdict should be for the defendant. Should you answer either question in the negative,—that is, should you find that there were not threads of other materials than wool in these goods; or, even if answering that in the affirmative, you should find that they were not introduced with the intent to undertake to change the classification,—then your verdict will be for the plaintiff. You need not concern yourselves with the amount in dollars, because that can be written into your verdict when it is rendered.

The defendant has requested me to charge that the collector is presumed to have assessed the duty according to law; and that the burden of proof is on the plaintiff, to show by preponderance of evidence that the collector was wrong. I so charge.

The plaintiff requests me to charge that "it is established that the filling of those goods was composed wholly of wool," and that "it is established that no separate thread of the warp of these goods was composed wholly of wool." I so charge. You will understand that the warp of the goods are the threads or yarns which run parallel to each other, and lengthwise through the goods. No single one of those threads was itself composed wholly of wool. I also charge you that the warp of these goods was composed of both cotton and wool in union. And also charge

the plaintiffs' last request, viz., that "the plaintiffs are not prohibited from so manufacturing goods as to conform to a lower, rather than higher, exaction of the tariff; and though they may have adopted a very technical device to escape the higher rate, the question presented by the case is only whether their goods are embraced within the higher rate, and is not whether the plaintiffs have evaded the law."

The defendant requested the court to charge: (1) That if the jury find that the selvedge of these goods was made wholly or in part of cotton, introduced for the purpose of changing the classification, there should be a verdict for the defendant; (2) that if the jury find that the plaintiffs' goods were made with threads composed of wool and cotton, introduced for the purpose of changing the classification, verdict should be for the defendant; (3) that if the jury find that these goods are women's dress goods, substantially composed of wool, and known in trade and commerce as "all-wool fabrics," the defendant is entitled to a verdict; (4) that if the jury find that the quantity of cotton introduced in these goods is so insignificant as not to alter the character of the goods and remove them from the category of "all-wool dress goods," as known in trade and commerce, the defendant is entitled to a verdict,—each of which requests were denied by the court.