TYLER CO. v. UNITED STATES (No. 1432).[1]

1. METAL THREADS.

   Metal threads must be taken to mean articles having a core of vegetable or animal substance wound about with tinsel wire, lame or lahn.

2. METAL THREADS IN PARAGRAPH 179, TARIFF ACT OF 1909.

   Assuming that metal threads must be twisted, there is no evidence of record here that the so-called metal threads in this case were so treated, the evidence rather showing they were made of fine-gauge wire. They were properly assessed as manufactures of metal under paragraph 199, tariff act of 1909.

United States Court of Customs Appeals, May 18, 1915.

APPEAL from Board of United States General Appraisers, Abstract 36049 (T. D. 34609).

[Affirmed.]

*John M. Garfield* for appellants.

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case was returned by the appraiser as "certain brass and bronze wire cloth," and duty was assessed by the collector at 45 per cent ad valorem, plus 1 cent per pound, under paragraph 199 in connection with paragraph 135 of the act of 1909. The importers protested this assessment and claimed the merchandise was properly dutiable as an article made wholly or in chief value of metal threads under paragraph 179 of the same act. The Board of General Appraisers after hearing the protest overruled the same and the importers appeal to this court.

The rate contended for by the importers is higher than that imposed by the collector. While cognizance is had of this condition by the parties and by the board, no reliance is placed thereon in this court by either party, and we dispose of the case entirely upon other grounds.

At the hearing before the board two witnesses testified on behalf of the importers and none for the Government. It appears from this testimony that the merchandise is imported in rolls about 100 feet in length and its chief use is in paper mills for straining pulp.

Paragraph 179 reads as follows:

179. Tinsel wire, lame or lahn, made wholly or in chief value of gold, silver, or other metal, five cents per pound; bullions and metal threads, made wholly or in chief value of tinsel wire, lame or lahn, five cents per pound and thirty per centum ad valorem; fabrics, laces, embroideries, braids, galloons, trimmings, ribbons, beltings, ornaments, toys, or other articles, made wholly or in chief value of tinsel wire, lame or lahn, bullions, or metal threads, fifteen cents per pound and sixty per centum ad valorem.

---

[1] Reported in T. D. 35433 (28 Treas. Dec., 827).

The real controversy here is whether the merchandise should be classified under paragraph 179, above quoted, because if not so there is no claim that the board erred, as it concededly is within paragraph 199 as a manufacture of metal. The issue further narrows to whether this wire cloth is made of metal threads within the meaning of the paragraph. Upon this issue the board in its decision said:

However, there is absolutely nothing in the record before us which sustains the importer's contention that this wire cloth is composed of metal threads.

The board then cited cases in support of the view that it is made of wire, and not thread, some of which will be later referred to.

The tag, evidently descriptive of the merchandise, attached to the official exhibit refers to it as "Phosphor bronze wire cloth, 80 mesh, 0.007 wire." The evidence of record is that it is woven of wire of 0.006 gauge. The importers strenuously contend that we should hold these wires to be metal threads within paragraph 179, while the Government claims that the term "metal thread" in that paragraph is, in view of the decisions, "a cotton or silk strand wound about with tinsel wire, lame or lahn."

It seems that the term "metal thread" has been employed in similar connection in tariff statutes for many years. In the tariff act of 1872 provision was made for "bullions or cannetille and metal threads, file or gespinst," and this provision remained unchanged in the act of 1883. The act of 1890 provided in paragraph 196 for "bullions and metal thread of gold, silver, or other metals, not specially provided for," and paragraph 737 of the free list made provision for tinsel wire, lame or lahn.

In G. A. 1780 (T. D. 13433), decided by the board in 1892, paragraph 196 of the act of 1890 was under consideration and the merchandise was held to be classifiable as metal threads thereunder. This case is much relied upon by the importers here, but is not authority, because that case was in express terms overruled by the board in T. D. 13988, decided a year later, in which case it was said:

In G. A. 1780 it was decided that merchandise identical with that in question was dutiable at 30 per cent ad valorem as metal thread. We now hold this decision to be erroneous.

Popularly and commercially tinsel wire is copper or brass wire covered with a coating of bright metal, such as gold, silver, bronze, or foil. Metal thread of commerce is a core composed of a vegetable or animal substance wound about with lame or lahn.

The act of 1894 contained in paragraph 162 the same provision as appeared in paragraph 196 of the act of 1890, and paragraph 654 of the free list was not different from the corresponding paragraph in the act of 1890.

Paragraph 179 of the act of 1897 related to "bullions and metal threads, made wholly or in chief value of tinsel wire, lame or lahn,

* * * laces, * * * or other articles made wholly or in chief value of bullions, or metal threads," and contained no provision for free entry of any of these materials or articles.

In T. D. 24158 paragraph 179 of the act of 1897 was considered by the board and the term "metal thread" was said to be a commercial term generally used for many years to designate an article made by twisting a thread of cotton or other vegetable fiber or silk with a strand or strands of tinsel wire, lame or lahn, and that it did not include any article composed wholly of metal. See also G. A. 5087 (T. D. 23555) and G. A. 5259 (T. D. 24157).

Paragraph 179 of the act of 1909 contains substantially the same provision as that of paragraph 179 of the act of 1897, adding thereto, however, the word "fabrics." It also omits provision for free entry of the articles or materials therein named.

From the foregoing it seems clear that the Board of General Appraisers has, excepting the first case mentioned, consistently held, when that question was before it, that the term "metal thread" employed in similar paragraphs of various preceding tariff acts means an article having a core of vegetable or animal substance wound about with tinsel wire, lame or lahn. From this it would seem to follow that for an article to be made of metal threads, within the meaning of the paragraph now under consideration, threads of that character should be used in the manufacture thereof. The fact that Congress has reenacted the provision in substantially identical language would seem to constitute a legislative adoption of that meaning of the term "metal thread," and such would also seem to be the uniform administrative interpretation thereof.

Under these circumstances, and in view of the record, we think paragraph 179 of the act of 1909 should receive a like interpretation in this case.

We have not omitted to note that in G. A. 7291 (T. D. 31968) certain beltings reported to be made of metal thread and other materials, metal threads of chief value, were held dutiable under paragraph 179, but in that case there was no question that the beltings or fabrics were not made of a metal thread within the definition already mentioned.

In the case at bar the importer has introduced no evidence which fairly tends to show that the material from which the fabric here is made is other than a wire. While it is true the witnesses occasionally refer to it as being made of a thread of metal, the word "wire" is generally used by them to characterize its material. It appears to be manufactured in the same manner as wire, by drawing the component metal through dies of various sizes, and it is classified for purpose of *use* by the gauge thereof. Not only this but the fabric itself is by the witnesses generally referred to as wire cloth.

What the importer really asks this court to do is to say upon an inspection of the wires of which this cloth is made that they are, within the scope and for the purposes of paragraph 179, metal threads.

The term "thread" is generally defined by lexicographers substantially as follows:

A slender cord composed of two or more yarns or filaments as of flax, cotton, silk, or other fibrous substance twisted together. A filament, fiber, or fine line of any substance.

Wire is likewise generally defined by the Standard Dictionary as—

A slender rod, strand, or thread of ductile metal, now usually formed by drawing through dies or holes, though formerly made by hammering. Wire varies in diameter from one inch to one-seven thousandths of an inch, or less, but ordinarily when thicker than three-sixteenths of an inch it is termed a rod.

In Luckemeyer *v.* Magone (38 Fed., 30), cited by the importer, and in which the meaning to be given to the word "threads" was material, Lacombe, Judge, in charging the jury said, amongst other things, that a thread as defined by the dictionaries was produced by giving to its constituent parts a twist and that the alternative word, filament, although not necessarily importing a twist, was defined by some authorities as a substance like a thread, thus indicating some measure of twisting.

The importers in their brief here claim that if twisting be an essential element of a metal thread it has been applied to the so-called metal threads in this case. We do not find any evidence of record which substantiates this claim. The so-called threads of which the merchandise here is woven, when examined under the microscope, do not appear to have been twisted. The condition thereof, which upon a casual examination simulates a twisted appearance, seems rather the result of the accommodation of one thread by the other necessitated by the weaving process.

There is still a further consideration which is not without force here. Paragraph 135 of the act of 1909 provides for a duty upon certain wires; that the same and all other wire not specially provided for shall pay a certain minimum duty; that articles made wholly or in chief value of any wire therein provided for shall pay a certain maximum rate of duty; and that no article made from or composed of wire shall pay less than 40 per centum ad valorem. Similar provisions have been made in relevant paragraphs under preceding tariff acts. This evidences, we think, a consistent intention on the part of Congress to regard for duty purposes wire composed wholly of metal as *wires* and *not* as *threads;* hence the meaning of the term "metal threads" in paragraph 179 must be construed in view of this intention and in such a manner as to give full force and effect thereto. If Congress designed to use the term "metal threads" in paragraph 179

as a synonym for metal wires, it naturally would not have employed the word "threads." Understanding, however, as it must be presumed to have understood, that there is no certain line of demarcation between the meaning of the term "metal threads" if it be interpreted as claimed by the importers and the term "metal wires" or the more common equivalent "wires" employed in paragraph 135, Congress would be open to the charge of having used language tending to promote confusion rather than certainty. We can not think this a reasonable conclusion and avoid it by giving to the term "metal threads" in paragraph 179 the meaning which we have above adopted.

We think the importers here have failed to show that the merchandise under consideration is made of anything other than a fine-gauge wire, and it follows, therefore, that the judgment of the Board of General Appraisers is *affirmed*.