UNITED STATES *v.* RIETMANN PILCER CO. (No. 3669)[1]

United States Court of Customs and Patent Appeals, January 29, 1934

*Charles D. Lawrence,* Assistant Attorney General (*Hugo P. Geisler,* special attorney, of counsel), for the United States.

*Brown & Carter (Allan R. Brown* and *Fred J. Carter* of counsel) for appellee.

[Oral argument December 6, 1933, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The Government has appealed to this court from a judgment of the United States Customs Court which sustained appellee's protest against the collector's classification of and assessment of duty upon certain imported merchandise under paragraph 1527 of the Tariff Act of 1930, which merchandise is referred to by the appraiser as "pocket powder cases with mirror."

One of the claims in the protest was that the merchandise was dutiable under paragraph 385 of said act. In view of our conclusion, the other claims made in the protest are unimportant.

The material parts of the two paragraphs under consideration are as follows:

PAR. 385. * * * beltings and other articles made wholly or in chief value of * * * metal thread, * * * not specially provided for, 45 per centum ad valorem * * *.

---

[1] T. D. 46942.

PAR. 1527. * * * (c) Articles valued above 20 cents per dozen pieces. designed to be worn on apparel or carried on or about or attached to the person, such as and including * * * mesh bags and purses * * * powder cases * * * vanity cases * * * and like articles; all the foregoing and parts thereof, finished or unfinished:

> \* \* \* \* \* \* \*

> (2) composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate), or (if not composed in chief value of metal and if not dutiable under clause (1) of this subparagraph) set with and in chief value of precious or semiprecious stones. pearls, cameos, coral, amber, imitation precious or semiprecious stones, or imitation pearls, 1 cent each and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem.

The following stipulation was entered into between the parties and the protest was submitted for the decision of the United States Customs Court on said stipulation:

> It is hereby stipulated and agreed between counsel that the merchandise represented by item 4055, wherever it may appear upon the invoice covered by the above-enumerated protests and whether or not accompanied by other numbers or letters, is represented by the attached sample marked "No. 1."
>
> It is further stipulated that the attached sample no. 1 may be received in evidence and marked "Exhibit 1."
>
> It is further stipulated that the attached piece of cloth marked "No. 2" is of the same character as that contained in sample no. 1, and that it may be received in evidence and marked "Illustrative exhibit A."
>
> It is further stipulated that exhibit 1 is an article designed to be carried on or about the person and is composed in chief value of metal thread.
>
> It is further stipulated that the metal thread, which is composed of a textile thread wound with metal, is in chief value of metal.
>
> It is further stipulated that the protest is submitted on this stipulation and that thirty days from this date may be allowed plaintiff for brief and thirty days thereafter for the Government.

Exhibit 1 is representative of the merchandise and is a lady's folding purse or pocketbook containing one small pocket and a mirror. The outside of the article is made of a heavy woven fabric composed of metal threads and silk threads. The metal threads form the warp and the silk threads form the weft. The article is lined with tan-colored silk. There is no contention here that the article is not described in paragraph 1527 if the metal component of the metal thread is regarded as metal within the meaning of that paragraph. The merchandise is valued above 20 cents per dozen pieces; is designed to be worn on apparel or carried on or about or attached to the person and, in most respects, is a like article to mesh bags and purses.

It will be noted that the stipulation, if strictly construed, can hardly be said to state that the article is in chief value of the metal that is contained in the thread. The stipulation recites that the atricle is "composed in chief value of metal thread" and that the metal thread is "composed of a textile thread wound with metal", and is "in

chief value of metal." There might be a situation where an article would respond to the terms of the stipulation and yet not be in chief value of the metal which was contained in the thread. However, the case is presented here upon the theory that if by the term "metal", contained in the phrase "in chief value of metal" in paragraph 1527, Congress meant to include the metal content of metal threads, then the imported merchandise is described in paragraph 1527.

In support of the decision of the trial court, the importer contends here that Congress has consistently distinguished between metal thread and metal as being different materials for tariff purposes; that the "textile material, metal thread, is not within the contemplation of paragraph 1527"; and that since a purse made of metal thread is not a purse made of metal, there is no place for the application of the rule of relative specificity as between the two provisions under consideration.

The First Division of the United States Customs Court, in a carefully prepared opinion by Judge Sullivan, in sustaining the protest of the appellee, held that the imported goods did not consist of metal within the meaning of the term as was intended by its use in paragraph 1527, but were articles composed of metal threads.

We think the trial court reached the right conclusion. The article is in chief value of metal threads and is dutiable under paragraph 385. Congress has, during a long period of time, treated metal threads as a separate tariff entity from metal. It continued to do so after the fact had been called to its attention that the customs administrative authorities and the courts had recognized such a legislative distinction.

The case of *Tyler Co.* v. *United States*, 6 Ct. Cust. Appls. 158, T.D. 35433, is relied upon by the importer and is quoted from at some length. This court there had under consideration certain wire cloth which the court held not to be wholly or in chief value of metal threads. In the decision, the history of legislation with respect to metal threads, and the court decisions with respect thereto, were reviewed. The issues of the *Tyler Co.* case are so irrelevant to the issues at bar that the decision is not regarded as being very helpful to us here, and it will not be further discussed.

In *Eckstein & Co.* v. *United States*, T.D. 31968, 21 Treas. Dec. 421, the Board of General Appraisers (now the United States Customs Court) had under consideration certain beltings made of metal thread, cotton and india rubber, the metal thread being in chief value. The question involved the applicability of a provision in the Tariff Act of 1909 for "Beltings * * * made wholly or in chief value of * * * metal threads * * *" as against a provision in the same act for "Beltings * * * of cotton, * * * india rubber, and metal and not elsewhere specially provided for in this section." The board held that the merchandise was described in both paragraphs, but that the paragraph for beltings in chief value

416

of metal thread controlled over the other paragraph, and among the reasons assigned for such result said:

> There is another reason why in our opinion the provision in paragraph 179 must prevail over that in paragraph 349. Congress has provided for "metal thread" as a material and has thus distinguished it from the material "metal." Note the ruling of the board in G.A. 4734 (T.D. 22381). It has been urged that this construction would in part nullify the provision in paragraph 349. We cannot take that view of the matter. The provision in paragraph 349 may well apply to elastic goods of cotton ornamented with metal, such as metal-studded belting, and to elastic belts with metal buckles, and as to such merchandise no question could be raised. * * *

In the Summary of Tariff Information, 1920, at page 240, the decision in the *Eckstein & Co.* case was definitely called to the attention of Congress in the following language:

> Paragraph 179 of the act of 1909 was declared to provide for metal thread as a material as distinguished from the material metal and to take out of the provision in paragraph 349 for "beltings of cotton, india-rubber, and metal not elsewhere specially provided for", beltings of metal thread, cotton, and india-rubber, metal thread chief value (G.A. 7291, T.D. 31968, of 1911).

All tariff acts passed subsequent to the Tariff Act of 1909 have contained, in substantially the same language, the usual provision for "beltings [and other articles] made wholly or in chief value of * * * metal threads."

Appellee in its brief argues:

> The Customs Court in *Eckstein* v. *United States, supra,* did not establish a new or unusual doctrine in reaching its decision. There is perhaps no principle which has been more closely adhered to by the courts. A distinction made by Congress as to tariff commodities is effective throughout all acts and parts of acts in pari materia. So powerful is the effect of such distinction that it will be presumed to continue, even though the clause which originally created or recognized the distinction is dropped from the law. The following cases are illustrations of the courts' application of this doctrine: * * *

Here follows the citation of numerous cases, all of which involve the principle that, although a thing may be technically named in a paragraph, the articles so named may not be dutiable thereunder. One of the cases holds that for tariff purposes wool on the skin is not wool; another, that cordials are not spirits; another, that hairpins are not pins; and another, that ornaments are not trimmings. The other cases are to the same effect.

We are of the opinion that a consideration of the context of the competing provisions and related provisions in the act, pertinent judicial holdings, and the history of the legislation concerning the subject matter of the various metal paragraphs and metal-thread provisions, makes inevitable the conclusion that the Congress in the Tariff Act of 1930 did not intend that the metal in metal threads should be regarded as metal so as to require an article in chief value of the metal in metal threads to be taken from paragraph 385 and be classified under paragraph 1527.

We are, in part, led to this conclusion by a consideration of the fact that paragraph 385 not only provides for beltings and other articles made of metal threads, etc., but it provides for metal threads. If the Government's contention here should be followed to its logical conclusion, the metal threads there provided for would also be carried over into paragraph 1527 as "materials of metal" suitable for the manufacture of such articles. This result we cannot believe Congress intended.

The judgment of the United States Customs Court, sustaining appellee's protest, is *affirmed*.